AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Western District of Arkansas
Fort Smith Division

| | |
|---|---|
| In the Matter of the Search of | ) |
| **INFORMATION ASSOCIATED WITH** | ) |
| **URL: Facebook.com/schwartzquartzandstone** | ) |
| **USER ID NUMBER: 1183641711781525** | ) |
| **URL: Facebook.com/sschwartz1114** | ) |
| **USER ID NUMBER: 100006239710306** | ) |
| **URL: Facebook.com/bekahschwartz** | ) |
| **USER ID NUMBER: 1486718503** | ) |
| **AT PREMISES CONTROLLED** | ) |
| **BY FACEBOOK INC.** | ) |

Case No. ___2:20-cm-34_____

**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Mar 27, 2020

OFFICE OF THE CLERK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **SEE ATTACHMENT "A".**

located in the Northern District of California there is now concealed *(identify the person or describe the property to be seized)*: **SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ■ evidence of a crime;

- ☐ contraband, fruits of crime, or other items illegally possessed;

- ☐ property designed for use, intended for use, or used in committing a crime;

- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 641 | Theft of Government Funds |
| 42 U.S.C. § 408(a)(4) | Concealment of Material Facts |
| 18 U.S.C. §1001 | False Statements |

The application is based on these facts: **See Affidavit of Special Agent Charles M. Briscoe**

- ■ Continued on the attached sheet.

- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_Charles M. Briscoe /s/_____
*Applicant's signature*

Charles M. Briscoe, Special Agent SSA/OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __March 27, 2020__

_____
*Judge's signature*

City and state:   __Fort Smith, Arkansas__

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Charles M. Briscoe, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     Your Affiant makes this Affidavit in support of an application for a search warrant for information associated with certain Facebook user IDs that are stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in Facebook's possession pertaining to the subscriber or customer associated with the user ID.

2.     Your Affiant is a Special Agent with the Social Security Administration – Office of the Inspector General (known hereinafter as SSA/OIG), and has been since November of 2009.  Prior to my current employment, I was employed as a special agent with the United States Secret Service for a period of eight (8) years.  While being employed with the United States Secret Service and the SSA/OIG, I attended extensive training pertaining to crimes associated with, but not limited to, Social Security fraud, false statements, identity fraud, wire fraud, misuse of social security numbers, embezzlement, money laundering, as well as a vast array of other financial crimes.  I received this training from the Federal Law Enforcement Training Center, U.S. Secret Service James J. Rowley Training Center (JJRTC), as well as the Inspector General Criminal Investigators Academy.  Since my employment, I have also received additional training pertaining to the aforementioned criminal activities from various law enforcement training

sessions.   During my employment, I have gained experience in working multiple complex criminal cases involving these matters, both on state and federal levels.

3.      The facts in this Affidavit come from an investigation conducted by the SSA/OIG and its fraud taskforce known as the Continuing Disability Investigations Unit (known herein after as CDI Unit).   The unit consists of members from the SSA, the Arkansas Disability Determination for the Social Security Administration (known herein after as DDS), and the Arkansas Attorney General's Office.   The unit's function is to determine if fraud is involved during the initial SSA disability application phase or after a beneficiary was approved for benefits. This Affidavit is intended to show merely there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe violations of Title 18, U.S.C. § 641 (Theft of Government Funds), Title 42, U.S.C. § 408(a)(4) (Concealment of Material Facts), and Title 18, U.S.C. § 1001 (False Statements) were committed by Stephen Schwartz (known herein after as SCHWARTZ) in the Western District of Arkansas.   Your Affiant believes probable cause exists to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as further described in Attachment B.

<u>**PROBABLE CAUSE**</u>

5.      This investigation has revealed SCHWARTZ, a Title 2 Disability Insurance Beneficiary and a resident of the Western District of Arkansas, Fort Smith Division, has been involved in a business known as Schwartz Quartz and Stone.   Investigation indicated his wife, Rebekah Schwartz, is also involved in the business.   These activities, and earned income derived thereof, has been concealed from the SSA for the last couple of years, up through present day.

SCHWARTZ is also involved in other activities and positions that contradict his previous statements made to SSA regarding how his medical condition affects him. During the application process and throughout reviews conducted by the SSA after approval of benefits, beneficiaries are explained their reporting requirements, to include any and all employment (or attempted employment) activities, no matter how significant the employment may be, as well as any improvement to their medical conditions.

6.    On May 16, 2000, SCHWARTZ applied for the Title 2 benefits based on medical complications resulting from a stroke. Listed impairments included brain damage that affected his ability to count, read, drive, solve problems, tell time, and see, as well as heart disease. On September 12, 2000, SCHWARTZ was approved for benefits.

7.    In, or around, June 2016, a work review was conducted by the SSA after reviewing earnings posted to his SSA record. The latest earnings posted include wages from the Fort Smith School District for FY 2015 in the amount of $10,812.24. SSA also discovered earnings from Bob Schwartz Native Stone Company for FY 2014 in the amount of $11,000.00. Other earnings from the same company were posted from FY 2005 through 2009. Bob Schwartz has been identified as the father of SCHWARTZ.

8.    As a result of the work review, SSA ceased SCHWARTZ'S benefits in June of 2016, which resulted in an overpayment calculation of $44,572. This prompted SCHWARTZ to file an expedited request for reinstatement, claiming he is still disabled and that the impairment is the same pertaining to his prior entitlement. The filing reported he was not involved in substantial gainful activity and his condition prevented him from performing substantial gainful activity.

9.      Due to the filing of reinstatement of benefits, SCHWARTZ completed a new application for Title 2 benefits, along with various other forms to support his claim of impairments.   Pursuant to his new application process, SCHWARTZ completed a Function Report and a Continuing Disability Review (known herein after as CDR) Report.

10.     On July 13, 2016, SCHWARTZ, with the aid of his wife, completed the Function Report.  On the report, they claim SCHWARTZ cannot focus or think clearly and cannot read or write.  Furthermore, they claim his daily activities include: takes a shower, takes medications that his wife lays out for him, eats breakfast, watches television, does little things around the house to stay busy, visits parents, eats lunch, naps, goes to his friend's car shop, eats dinner, and goes to bed.  When asked what he did before his condition that he cannot do now, they claim he cannot read, write, focus, understand, drive big trucks, keep log books, follow map/directions, not get lost, see at night, carry conversations, and count.  They further report SCHWARTZ needs reminders for his medication and also to eat.  On the form, they wrote, "If I am going somewhere I have never been, my wife goes".  They also report he cannot pay bills, count change, handle savings accounts, or use checkbooks, writing, "I have brain damage. I can't figure numbers (math/money)".  When asked how his condition affects him, they claim it affects his ability to lift, use hands, understand, see, remember, following instructions, concentrate, sit, talk, complete tasks, and get along with others.

11.     On July 15, 2016, SCHWARTZ, with the aid of his wife, completed the CDR Report, during which, they state he suffers from loss of memory and cognitive thinking, has a blood disorder, and essential thrombocytosis.  Under the "Daily Activities" section, they claim his day consists of breakfast, showering, piddling around the house, eating, watching television, and going to bed.  SCHWARTZ and his wife claim his condition affects his ability to take

medication, manage money, see, concentrate, remember, follow directions, complete tasks, and get along with people, further claiming, "Can't understand or can't grasp what people mean". Under the "Work" section, SCHWARTZ and his wife marked he has worked since his last medical decision, but did not provide specific details.

12.     On February 3, 2017, Arkansas DDS made a medical determination that SCHWARTZ was disabled and provided a date of entitlement dating back to June 2016 when he filed the expedited reinstatement request.  Associated with the medical determination, a document from an adjudicator explained the beneficiary continued to experience significant functional cognitive deficits and that he, and his third party, describe multiple functional issues related to cognitive function on their respective function reports.  It further reports SCHWARTZ and his third party endorse he has confusion, problems with focus, memory, concentration, competing tasks, understanding, and following instructions.  It is also noted SCHWARTZ is unable to read, write, or handle money, and has problems dealing with stress, changes, and he can only follow simple instructions and concepts.

13.     On July 19, 2017, Schwartz Quartz and Stone, LLC was incorporated with the Arkansas Secretary State.  Rebekah Schwartz was listed as the incorporator/organizer.  The principal address of the business is the Fort Smith residential address of SCHWARTZ and his wife, which is located in the Western District of Arkansas, Fort Smith Division.

14.     On December 21, 2017, in the Western District of Arkansas, SCHWARTZ and Rebekah jointly filed for Chapter 7 Bankruptcy (Case No 2:17-bk-73176).  This case was later converted to Chapter 13 Bankruptcy.  Under the section titled, "Report About Any Businesses You Own as a Sole Proprietor", the petition asks "Are you a sole proprietor of any full – or part-time business", and they marked, "No".  Under the section titled, "Answer These Questions for

Administrative and Statistical Records", the petition advised to report their total current monthly income, to which they reply, "$300.63".   Under the section titled, "Describe Your Financial Assets", the petition requires them to list any financial assets not listed, to which they reply, "No".   Under the section titled "Describe Any Business-Related Property You Own or Have an Interest In", the petition asks if they own or have any legal or equitable interest in any business-related property and they reply, "No".   When required to list nonpriority unsecured claims, they list Social Security in the amount of $39,541.30 in an effort to have the aforementioned overpayment discharged.   Under the "Income" Section, SCHWARTZ listed he is disabled and Rebekah listed she is self-employed at Schwartz Quartz & Stone, LLC.   Both SCHWARTZ and Rebekah listed their monthly gross income is zero.   For monthly net income, SCHWARTZ marked zero and Rebekah claimed $300.63.   They also report they do not expect an increase or decrease within the year after filing the form.   Under the section titled, "Explain the Sources of Your Income", the petition requires them to list any income from employment or operating a business.   From January 1, 2017 and throughout the year, SCHWARTZ marked he had zero gross income.   Rebekah listed she made $22,000 in gross income for the entire year.   Under the section titled, "Give Details About Your Business or Connections to Any Business", the business was listed as "Schwartz Quartz and Stone" and the business dates are listed from "July 19, 2017 to present".   This case was subsequently dismissed.

15.     On November 29, 2018, in the Western District of Arkansas, SCHWARTZ and Rebekah jointly filed for Chapter 7 Bankruptcy (Case No 2:18-bk-73153).   Under the section titled, "Identify Yourself", SCHWARTZ and Rebekah report they have not used any business names in the last eight (8) years.   Under the section titled, "Report About Any Businesses You Own as a Sole Proprietor", the petition asks, "Are you a sole proprietor of any full – or part-time

business", and they marked, "No".  Under the section titled, "Describe Your Financial Assets", they claim a Fort Smith First National Bank checking account deposit was in the amount $300.  Also, under the section pertaining to property, they claim to have $300 in their First National Bank of Fort Smith checking account.  Under the section titled, "Describe Any Business-Related Property You Own or Have an Interest In", the petition asks if they own or have any legal or equitable interest in any business-related property, they replay "No".  Under the "Income" Section, SCHWARTZ listed he is disabled and Rebekah listed she is self-employed at Schwartz Quartz & Stone, LLC.  Both SCHWARTZ and Rebekah list their monthly gross income is zero.  For monthly net income, SCHWARTZ marked zero and Rebekah claimed negative $1.04.  They also report they do not expect an increase or decrease within the year after filing the form.  Under the section titled, "Explain the Sources of Your Income", the petition requires them to list any income from employment or operating a business.  From January 1, 2017 and through December 31, 2017, SCHWARTZ marked he had zero gross income.  Rebekah listed she made $22,000 in gross income for the entire year.  Under the section titled, "Give Details About Your Business or Connections to Any Business", the business was listed as "Schwartz Quartz and Stone" and the business dates are listed from "July 19, 2017 to present".  This bankruptcy case subsequently resulted in a discharge.

16.     Based upon your Affiant's investigation, the First National Bank of Fort Smith statement of account belonging to Schwartz Quartz and Stone for the period of November 1, 2018 through and including December 2, 2018, showed a previous balance of $4,727.34 and an ending balance of $990.80.  The First National Bank of Fort Smith statement of account for the period of November 1, 2018 through and including December 2, 2018 reflected 14 deposits totaling $35,137.86 for the month and 60 checks/charges totaling $38,871.40.  This account is

labeled as a "Basic Business Checking".  The transactions revealed in the statement of account belonging to Schwartz Quartz and Stone for the period of November 1, 2018 through and including December 2, 2018 appears to contradict information reported in the section titled, "Describe Your Financial Assets," in which $300 was reported to be the amount of money in the First National Bank of Fort Smith checking account belonging to Schwartz Quartz and Stone.

17.     On October 3, 2019, the SSA Fort Smith, AR Office referred an allegation involving SCHWARTZ to the CDI Unit for investigation.  The referral indicated SCHWARTZ was concealing work activities and potentially malingering with his medical claims.

18.     On November 5, 2019, a CDI Unit investigator conducted a ruse interview of SCHWARTZ at SCHWARTZ'S residence in Fort Smith.  The investigator observed a pickup truck bearing Arkansas license plate that read "SQSTONE".  Upon contact, SCHWARTZ informed the investigator he was a county official, namely a justice of the peace in Sebastian County and he was appointed by Governor Asa Hutchinson to replace his father, who previously held the position.  Furthermore, SCHWARTZ advised the investigator he does home remodels and works with his wife, explaining they have a counter top business and it is "big business".  He further stated he has been so employed for the past two (2) years.  SCHWARTZ stated his wife is the business owner and payments for remodels and installs are made out to his wife and in the company's name.  He advised he does not receive payments.  He further advised they are wholesalers and contract directly with the factory and they have a crew that performs installations as he oversees operations.  SCHWARTZ stated he accesses the Internet daily on his mobile device and has made purchases online from Marketplace on Facebook.  He also stated he purchases tools, equipment, and supplies and leases various equipment at Lowe's with a business

account credit card.   In addition to the employment, SCHWARTZ also advised he participates in the "Steel Horse Rally", organizing a motorcycle race at the Tristate Speedway once a year.

19.     Your Affiant has probable cause to believe that social media accounts, particularly three Facebook accounts identified in this Affidavit, reveal evidence that SCHWARTZ is engaged in the performance of activities in the Western District of Arkansas that are associated with conducting and operating the business of Schwartz Quartz and Stone and is engaged in personal and recreational activities, all of which indicate SCHWARTZ has the ability to perform functions in a manner that is inconsistent with the claims and representations he has made to the SSA.

## SOCIAL MEDIA EXPLOITATION

20.     One method of investigation conducted by the CDI Unit is the exploitation of open-source social media to determine if any social media accounts have been established. Accordingly, the CDI Unit discovered three (3) Facebook accounts associated with SCHWARTZ, his wife, and their business, Schwartz Quartz and Stone.

21.     The exploitation of these accounts, which are open for public view, has revealed significant evidence connecting SCHWARTZ with the business, along with his ability to function, which contradicts his claims made to the SSA.  Below is a summary of the Facebook accounts:

22.     **Business Facebook Account:     Schwartz Quartz and Stone (URL: Facebook.com/schwartzquartzandstone/)  (Profile ID: 1183641711781525).**  Under the "Page Transparency" section, it shows the account was created on July 5, 2017.  Many customer reviews address appreciation for Rebekah (also known as "Bekah") and/or the team.  Some

reviews specifically address appreciation for SCHWARTZ (also known as "Steve"), as well.

Below is a summary of said reviews:

> Review dated October 14, 2018:  "Bekah and Steve exceeded my expectations.  They completed kitchen and bathroom renovations.  This team ensures that every aspect of the project is completed to the highest level possible.
> Every person that worked on my project was competent and friendly.  I could not be more happy with my renovations."
>
> Review dated June 21, 2018:  "We LOVE our new granite countertops!! Steve and Bekah Schwartz were so good to work with!!  Bekah stayed on top of every little detail of the process!!  She went above and beyond to make sure I had my perfect kitchen!!  Need new granite…Bekah is your girl!!  Would definitely recommend Schwartz Quartz & Granite (sic)!!"
>
> Review dated May 26, 2018:  "They did a great job! Local owners who respond to every call or text!  Call them if you want granite and give them a chance to beat even the big box store prices!"

Further evidence associated with this Facebook account include postings and photographs made

by "Schwartz Quartz and Stone".  Below is a summary of said postings:

> Posting dated February 12, 2020:  "FOR RENT, 800mo $300 deposit 3 beds 1 bath fully remodeled close to Ramsey and Fairview.  Pets possible (if approved will require an additional $200 deposit) contact Jordan Jack 479-461-0502.  Steve Schwartz Bekah Schwartz"  The posting shows photos of what appears to a newly remodeled kitchen.
>
> Posting dated December 23, 2019:  "To all our past, present, and future clients, we thank you for your continued support.  From our family to yours, Merry Christmas and Happy New Year!  Steve and Bekah Schwartz"
>
> Posting and Photographs dated August 19, 2019:  "It's official! We can announce that I have been sworn in to take over my fathers (sic) position as the Sebastian County Justice of the Peace for District 12.  I am truly honored and humbled to finish out his term.  My father has held this position consecutively for the past 24 years.  I hope to serve our county with the same dedication and enthusiasm as he did.  Thank you to my wife Bekah Schwartz for always supporting me, and Rylee Wall for being by my side today."   Photos depict SCHWARTZ signing a Duplicate Official Oath of Office pertaining to his appointment to Justice of the Peace of Sebastian County, one posing with Sebastian County Judge David Hudson, shaking his hand, and one depicting SCHWARTZ taking the oath for Justice of the Peace, sworn by Sebastian County

Judge David Hudson.

Posting and Photographs dated June 14, 2019:  "Today Steve and I went to a home to remove their granite.  (We had installed their stone a few years back).  They are victims of the flood and their insurance has refused to pay to replace the stone.  We were able to save their granite.  We will store their stone and reinstall when the time comes.  If you have found yourselves in the same predicament, give us a call and we will do what we can to help."  Photos include granite work.

Posting dated April 25, 2019:  "We are super proud to be a part of The Steel Horse Rally again this year.  So many incredible charities benefit from this rally each year.  So many things to see and enjoy downtown, as well as Steel Horse Rally Shootout II in Pocoloa Friday night.  Join us May 3rd and 4th for the 5th annual Steel Horse Rally.  Dennis Snow Karen Snow Steve Schwartz Bekah Schwartz Dawn Howell James Howell Wendy Miller."

23.    **Personal Facebook Account:  Steve Schwartz (URL:**

**Facebook.com/sschwartz1114)  (Profile ID: 100006239710306).**  Your Affiant could not find

an indication as to what date the account was created, however, the earliest upload on the

account timeline was dated May 8, 2018.  Limited information was available publicly pertaining

to this account as it seems privacy features had been enabled.  There were some postings that

illustrated his ability to concentrate, read, and write, contradicting his claims to SSA.  Below is a

summary of said postings:

Posting dated February 13, 2020 pertaining to a fundraiser for The Leukemia & Lymphoma Society.

Posting dated August 22, 2019:  "Clean title in hand. Good truck".  Included are photos of a pickup truck with an asking price of $3,500.

Photograph uploaded August 18, 2019:  Photo depicts SCHWARTZ shaking hands with Sebastian County Judge David Hudson associated with SCHWARTZ'S swearing in ceremony for Justice of the Peace.

Photograph uploaded February 10, 2019:  Photo depicts a side profile of SCHWARTZ next to his wife.  In the comments section, Rebekah Schwartz wrote. "I love this picture".  As a response to her comment, SCHWARTZ wrote, "Love the woman in it with me".  Also in the comment section, a person named Carolyn McDonald wrote, "You still running around with that hairy guy?".  Rebekah responded with, "yeah, I kinda like him".

SCHWARTZ followed with "If I shave it all off she would never be able to find my", adding a couple of emoji images.

24.    **Personal    Facebook    Account:    Bekah    Schwartz    (URL:** **Facebook.com/bekahschwartz) (Profile ID: 1486718503).**   Your Affiant could not find an indication as to what date the account was created, however, the earliest upload on the account timeline was dated December 7, 2017.  Limited information was available publicly pertaining to this account as it seems privacy features had been enabled.  There were some postings that illustrated SCHWARTZ'S ability to concentrate, read, and write.  Below is a summary of said postings:

> Photograph dated January 4, 2020:  Photo shows Rebekah and SCHWARTZ posing close together.  SCHWARTZ responds to the photo by writing, "You look Beautiful" and added a heart emoji.

> Photograph uploaded September 28, 2019:  Photo depicts SCHWARTZ operating a motorcycle with a passenger riding with him.

> Photograph uploaded December 18, 2018:  Photo depicts SCHWARTZ operating a motorcycle with Rebekah riding with him as a passenger.

> Photograph uploaded March 24, 2018:  Photo depicts SCHWARTZ and Rebekah in what appears to be a vacation setting.  SCHWARTZ commented, "I love you" and added an emoji.  He also responded in the comment thread to another individual, "Hay Derrin Hewitt we don't get the invite when you went to JJs party lol".

> Photograph uploaded February 11, 2018:  Photo depicts SCHWARTZ and Rebekah in a Valentine's setting.  SCHWARTZ commented, "I will take to Dinner at Denny's".

## FACEBOOK

25.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news,

photographs, videos, and other information with other Facebook users, and sometimes with the general public.

26.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

27.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

28.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

29.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

30.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

31.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant

messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

32.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

33.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

34.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

35.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user, but cannot be viewed by people who visit the user's Facebook page.

36.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

37.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which

are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

38.    Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

39.    In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

40.    Some Facebook pages are affiliated with groups of users, rather than one individual user.  Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group.  Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

41.    Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

42.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

43.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

44.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs,

status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

45.     Therefore, Facebook is likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

46.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

47.     Based on the forgoing, I request that the Court issue the proposed search warrant.

48.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

49.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Further your Affiant sayeth not

Charles M. Briscoe /s/
Charles M. Briscoe, Special Agent SSA-OIG

Subscribed and sworn to before me on this 27th day of March 2020.

Honorable Mark E. Ford
United States Magistrate Judge

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with Facebook accounts bearing the screen names **Schwartz Quartz and Stone (URL: Facebook.com/schwartzquartzandstone) (Profile ID: 1183641711781525), Steve Schwartz (URL: Facebook.com/sschwartz114) (Profile ID: 100006239710306), and Bekah Schwartz (URL: Facebook.com/bekahschwartz) (Profile ID: 1486718503)** that are stored at premised owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)   All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)   All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)     The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, U.S.C. § 641 (Theft of Government Funds), Title 42, U.S.C. § 408(a)(4) (Concealment of Material Facts), and Title 18, § U.S.C. 1001 (False Statement) involving Stephen SCHWARTZ since the creation of the accounts, including, for each user ID identified on Attachment A, information pertaining to the following matters:

    (a) Evidence pertaining to the violations of the theft of government funds, concealment of material facts as they relate to Social Security fraud, and false statements to the United States government such as photographs, videos, transactions, and messages of the suspect engaging in various business practices to include, but not limited to, the Schwartz Quartz and Stone company, or any other business, as well as any evidence associated with his position as Justice of the Peace, and/or organizing community events, in addition to photographs, videos, and messages associated with the suspect, his wife, and their activities.

    (b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

    (c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

    (d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).